IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAIME RODRIGUEZ, PATRICK MONTAÑO,
JOSH OTERO, and GERALD NIETO,

      Plaintiffs,

vs.                                                                    CIV. No. 03-173 JC/RHS

NEW MEXICO CHILDREN YOUTH AND
FAMILIES DEPARTMENT, DANNY CRUZ,
MARTIN BOCHENICK [sic], MANUEL
SISNEROS, VINCENT VIGIL, LEROY
GARCIA, TY HANNAMAN, and MARY JO
CORDOVA,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants Children Youth and Families Department, Danny Cruz, Martin Bochenick, Vincent Vigil, Leroy Garcia, and Ty Hannaman's Partial Motion to Dismiss Plaintiffs' Amended Complaint*, filed August 29, 2003 (*Doc. 53*); and on *Defendants' Motion to Dismiss Plaintiff Gerald Nieto with Prejudice*, filed December 12, 2003 (*Doc. 109*). Having reviewed the motions, memoranda and all relevant authorities, and being fully advised, the Court grants in part and denies in part *Defendants Children Youth and Families Department, Danny Cruz, Martin Bochenick, Vincent Vigil, Leroy Garcia, and Ty Hannaman's Partial Motion to Dismiss Plaintiffs' Amended Complaint* (*Doc. 53*), and denies *Defendants' Motion to Dismiss Plaintiff Gerald Nieto with Prejudice* (*Doc. 109*).

**I.**     *Background*

Plaintiffs are four juvenile incarcerates at the New Mexico Boys' School (Boys' School) in

Springer, New Mexico. Each Plaintiff alleges that while incarcerated at the facility, Defendant Cordova forced him to engage in sexual acts. Each Plaintiff claims that the misconduct, which occurred between 1997 and 2001, included sexual intercourse with Defendant Cordova by use of threats, intimidation, coercion, and by her absolute authority over the individual. Plaintiffs further allege that Defendants Cruz, Sisneros, Bochenick, Vigil, Garcia, and Hannaman (Supervisory Defendants) knew of Defendant Cordova's sexual misconduct as early as Spring 1999, yet failed to take preventative or investigative action. In fact, Plaintiffs Rodriguez, Montaño and Otero claim that upon reporting the abuse to Defendants Cruz and Bochenick, these Defendants retaliated against Plaintiffs, causing or permitting them to be subject to abuse and placement in solitary confinement.

On September 23, 2002, Defendant Cordova plead guilty to contributing to the delinquency of a minor, bringing contraband into a juvenile facility, and criminal sexual penetration.

**II.**     *Defendants' Motion to Dismiss Gerald Nieto*

Defendants allege that Plaintiff Nieto should be dismissed pursuant to Federal Rule of Civil Procedure 37(d) for failure to appear for a deposition and for failure to comply with discovery requests. The court has discretion to dismiss a case for discovery violations. *Archibeque v. Atchison, T&S.F. Ry.,* 70 F.3d 1172, 1174 (10th Cir. 1995). Dismissal, however, is the most severe sanction and should not be imposed if lesser sanctions are available. *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). Prior to dismissal, a court reviews several factors to determine whether the sanction is appropriate. The factors include: (1) the degree of actual prejudice to the opposing party; (2) the degree of interference with the judicial process; (3) the

litigants' culpability; (4) whether the litigant was warned in advance that dismissal was a likely sanction; and (5) whether a lesser sanction would be effective. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). In the present case, this Court finds that Defendants fail to demonstrate actual prejudice, as the discovery deadline has been extended until February 13, 2004. *Order Granting Defendants' Joint Motion for Leave to Take Additional Depositions and for Extension of the Discovery Deadline*, filed January 26, 2004 (*Doc. 137*).

### III.    *Standard of Review*

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)). The court may not dismiss a cause of action for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief. *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976). The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### IV.    *Discussion*

#### Plaintiffs' Fourteenth Amendment Claim

In Count II of Plaintiffs' *Amended Complaint for Civil Rights Violations, State Law Claims, and Damages* (Amended Compl.), filed April 23, 2003 (*Doc. 33*), Plaintiffs allege that the Supervisory Defendants violated their Eighth and Fourteenth Amendment rights by, among

other things, failing to protect them from the sexual predations of employees at the Boys' School although Defendants knew of such sexual misconduct. Defendants contend that Plaintiffs' Fourteenth Amendment claim must fail as a matter of law. They argue that the claim is actually one that must be analyzed under the Eighth Amendment's "cruel and unusual punishment" clause due to Plaintiffs' status as incarcerates at the Boys' School. *Memorandum in Support of Defendants Children Youth and Families Department, Danny Cruz, Martin Bochenek, Vincent Vigil, Leroy Garcia, and Ty Hannaman's Partial Motion to Dismiss Plaintiffs' Amended Complaint* (Def.s' Memo.), filed August 29, 2003 (*Doc. 54*). In support, Defendants cite various United States Supreme Court and Tenth Circuit opinions for the proposition that an inmate's excessive force claim is properly analyzed under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.10 (10th Cir. 1998); *Barrie v. Grant County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997); *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).

Plaintiffs argue that their Fourteenth Amendment claim is proper, as juveniles, such as themselves, are merely adjudged delinquent thereby setting them apart from adult offenders who are adjudged guilty and sentenced to prison confinement. For the following reasons, this Court finds Plaintiffs' arguments persuasive.

    A.    *The Delinquency Act and the Fourteenth Amendment*

The Delinquency Act (the Act) clearly enunciates the New Mexico Legislature's determination that certain juvenile offenders should not be punished in the same manner as adult offenders. Specifically, the Act's stated purpose is:

> to remove from children committing delinquent acts the adult

> consequences of criminal behavior, but to still hold children committing delinquent acts accountable for their actions to the extent of the child's age, education, mental and physical condition, background and all other relevant factors, and to provide a program of supervision, care and rehabilitation....

NMSA (1978) § 32(A)-2-2. The Act further specifies that a juvenile proceeding will not result in a conviction. "A judgment in proceedings on a petition under the Delinquency Act resulting in a juvenile disposition shall not be deemed a conviction of crime nor shall it impose any civil disabilities ordinarily resulting from conviction of a crime...." § 32(A)-2-18. Such statutory language clearly enunciates the Legislature's belief that juvenile offenders should not be treated in a like manner as similar adult offenders.

The next question is thus: because juvenile offenders are merely adjudged delinquent and are never convicted of a crime, as a matter of law may they bring an excessive force claim pursuant to the Fourteenth Amendment, when it is clearly established that "[a]ny protection that 'substantive due process' affords convicted prisoners against excessive force is...at best redundant of that provided by the Eighth Amendment." *Graham*, 490 U.S. at 395 n.10. Although there are no cases directly on point in this circuit, courts in other circuits have found that the Fourteenth Amendment is the proper vehicle for juveniles to bring their excessive force claims because they are merely adjudged delinquent and not convicted of a crime. *Santana v. Collazo*, 714 F.2d 1172, 1179 (1st Cir. 1983) (First Circuit not challenging district court's Eighth and Fourteenth Amendment analysis of juvenile excessive force claims); *Jackson v. Johnson*, 118 F. Supp 2d. 278 (N.D.N.Y. 2000).

Despite the fact that neither the Supreme Court nor the Tenth Circuit has addressed whether the Fourteenth Amendment is the proper constitutional means for a juvenile involuntarily

-5-

confined to a detention facility to bring an excessive force claim, both courts have addressed the issue in other analogous situations. For example, pretrial detainees' claims of cruel and unusual punishment are brought under the Fourteenth Amendment. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (acknowledging that the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement); *see also Graham*, 490 U.S. at 395 n.10 ("It is clear...that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."); *Bell v. Wolfish*, 441 U.S. at 536 n.16 ("Where the State seeks to impose punishment without [] an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.").

Due Process protections of the Fourteenth Amendment also apply to children in foster care, *Yvonne L. v. New Mexico Dep.'t of Human Servs.,* 959 F.2d 883, 892 (10th Cir. 1992) (a child involuntarily placed in a foster home may bring a section 1983 action for violation of Fourteenth Amendment rights), and to involuntarily committed mentally retarded persons. *Sawyer v. County of Creek*, 908 F.2d 663, 667 (10th Cir. 1990)(citing *Youngberg v. Romeo*, 457 U.S. 307 (1982)). In one last analogy, the Tenth Circuit held that involuntarily confined students at a state funded school for youths with behavioral problems properly brought their excessive force claim pursuant to the Fourteenth Amendment. *Milonas v. Williams*, 691 F.2d 931, 942 (10th Cir. 1982) ("The eighth amendment's [sic] proscription against 'cruel and unusual punishment' does not apply in a situation...where the involuntarily confined person has not been adjudicated guilty of any crime.").

The Court finds that due to the New Mexico Legislature's explicit determination that a juvenile disposition will not be a conviction of a crime, juvenile delinquent plaintiffs asserting

excessive force claims may be analogized to pretrial detainees and involuntarily confined persons who have not been convicted of a crime. Plaintiffs thus properly brought their claim pursuant to the Fourteenth Amendment.

      B.    *Qualified Immunity*

Defendants argue that if the Court determines that Plaintiffs may bring their claims pursuant to the Fourteenth Amendment, they are entitled to qualified immunity, as it was not clearly established at the time that juvenile incarcerates are entitled to the Due Process guarantees of the Fourteenth Amendment. "[Q]ualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset."*DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001)(quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir.1995)). Once Defendants assert the defense of qualified immunity, Plaintiffs must carry the burden of showing qualified immunity is not proper under the circumstances. *DeSpain*, 264 F.3d at 971. To do this, Plaintiffs must make a two-fold showing. First, Plaintiffs must demonstrate that Defendants' conduct violated a constitutional right. Second, Plaintiffs must show that "the [law] was clearly established such that reasonable persons in the [Supervisory Defendants'] position would have known that their conduct violated [the law]." *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003)(quotation omitted).

As discussed previously, the Court found that Plaintiffs properly alleged a violation of their Fourteenth Amendment rights. The next inquiry is thus whether that right was clearly established at the time. By 1983 the Supreme Court determined that the rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983); *Garcia v. Salt Lake*

*County*, 768 F.2d 303, 307 (pretrial detainees entitled to same degree of protection against denial of medical attention under Fourteenth Amendment as applies to convicted inmates under Eighth Amendment); *Craig*, 164 F.3d at 495 ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims."). As a result of the analogous situation between pretrial detainees and adjudicated delinquents, and due to the virtually indistinguishable constitutional rights guaranteed under the Eighth and Fourteenth Amendments, the Court finds that the law was clearly established that the actions of the Supervisory Defendants violated Plaintiffs' Due Process rights. Defendants thus are not entitled to qualified immunity.

**Plaintiffs' Fair Housing Act Claim**

Plaintiffs' Amended Complaint alleges that Defendants discriminated against Plaintiffs "on the basis of sex in the provision of services or facilities in connection with housing in violation of the Fair Housing Act (FHA), 42 U.S.C. § 3604." *Amended Compl.* at 8. Defendants argue that the claim should be dismissed as a matter of law, for the Springer Boys' School is not a dwelling as defined under the Act.

The FHA prohibits discrimination against any person "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." §3604(b). A dwelling is "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." §3602(b). Although the FHA does not define "residence," in *United States v.*

*Hughes Memorial Home*, the court defined "residence" as a "temporary or permanent dwelling place, abode or habitation to which one intends to return as distinguished from the place of [] sojourn or transient visit." 396 F. Supp. 544, 549 (W.D. Va. 1975). In the present case, Plaintiffs fail to demonstrate that the Boys' School is a residence under the FHA.

Plaintiffs attempt to prove that the Boys' School is a dwelling within the meaning of the FHA by showing that the juveniles are not transient but instead reside at the School for a period of time longer than a sojourn or visit. In support of their argument, Plaintiffs look to various cases in which courts have determined a place to be a dwelling under the FHA. *See* Pls.' *Response* at 10-12 (citing *Villegas v. Sandy Farms, Inc.,* 929 F. Supp. 1324, 1328-29 (D. Or. 1996) (migrant farm workers' cabins are dwellings within the meaning of the FHA); *Hughes Memorial Home*, 396 F. Supp. at 553 (a home for needy children falls under the FHA although the home was not intended as a permanent residence); *Hernandez v. Ever Fresh Co.*, 923 F. Supp. 1305 (D. Or. 1996) (the FHA is applicable to a temporary farm worker camp); *Baxter v. Belleville, Ill.*, 720 F. Supp. 720 (S.D. Ill 1989)(an office building remodeled into a facility for AIDS victims falls under the FHA); *Woods v. Foster*, 884 F. Supp. 1169 (N.D. Ill. 1995)(a shelter for homeless and battered women and their families is a dwelling); *Project Life v. Glendening*, 1998 WL 1119864, at \*\*2-3, unpublished disposition (D. Md. Nov. 30, 1998) (proposed residential substance abuse women's educational facility with "one month residency terms" is a dwelling under the FHA); *Lauer Farms, Inc. v. Waushara County Bd. of Adjustment,* 986 F. Supp. 544 (E.D. Wis. 1997) (trailers housing migrant farm workers for four to five months are dwellings under the FHA)).

Plaintiffs cite to these cases as support for their argument; yet they fail to discern the true difference between their situation and that of the other plaintiffs. In each of the above-cited cases,

the persons were not sent to the dwellings by the government and mandated to remain as punishment for unlawful acts. In other words, although those plaintiffs' ability to choose may have been meager, the fact that such an ability existed is a key differentiating factor between the cited cases and Plaintiffs' situation. The Court therefore finds no merit in Plaintiffs' contention that the Boys' School is a dwelling under the FHA.

The Court further finds no merit in Plaintiffs' statement that the Boys' School should not be analogized to a prison for purposes of the FHA. Such analogy is appropriate, as both inmates at prisons and juveniles at the Boys' School are sent to the facilities by the government and are not allowed to freely leave. Although Plaintiffs acknowledge that the New Mexico District Court has ruled that a city jail used as a detention facility is not a dwelling, Plaintiffs fail to differentiate that situation from the present. *See Garcia v. Condarco*, 114 F. Supp 2d. 1158 (D.N.M. 2000). This Court notes that the District of New Mexico on two other occasions has held that adult detention facilities are not dwellings under the FHA. *See Machacek v. Bustamante*, Civ. No. 99-1082 (D.N.M., filed May 3, 2000) (holding that the Bernalillo County Detention Center does not fall within the FHA's meaning of a "dwelling" and adopting the intent to stay inquiry); *Gold v. Griego*, No. CIV 99-1137 (D.N.M., filed Feb. 22, 2000) (holding that the San Miguel County Detention Center is not a dwelling under the FHA and stressing the intent to stay requirement). This Court finds that because juveniles are involuntarily sent to the Boys' School due to their misdeeds and mandated to remain for a fixed amount of time, the Boys' School is analogous to a prison or adult detention facility. This Court further finds no justification for deviating from this District's conclusion that prison facilities do not fall under the rubric of the FHA's intended definition of dwelling.

**Plaintiffs' Tort Claims Act Allegations**

Defendants argue that Plaintiffs' tort claims should be dismissed for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6). Although a motion to dismiss based on sovereign immunity grounds is more accurately considered under a lack of subject matter jurisdiction rather than a failure to state a claim, the Tenth Circuit has held that when a court's subject matter jurisdiction is dependent upon the same statute that provides the substantive claim, the jurisdictional question is necessarily intertwined with the merits . . . Under this precedent, such intertwined jurisdictional questions should be resolved under Federal Rule of Civil Procedure 12(b)(6). *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F. 3d 1514, 1518 (10th Cir. 1996) (citations omitted). Here, this Court's subject matter jurisdiction and the substantive claim in the case both derive from the New Mexico Tort Claims Act. (NMTCA). NMSA 1978 §§ 41-4-1 *et seq.* The Court, therefore, will consider Defendants' motion as a motion for failure to state a claim.

Plaintiffs' Amended Complaint alleges that three provisions in the New Mexico Tort Claims Act (NMTCA) waiving sovereign immunity are applicable to the facts of this case. The sections are NMSA §§ 41-4-10, 41-4-9, and 41-4-6. The NMTCA delineates the limitations on the tort liability of governmental entities and public employees. The NMTCA explains that the public policy of New Mexico is such that governmental entities and public employees shall only be liable within the limitations of the NMTCA, and further provides that governmental entities and public employees, while acting within the scope of their duties, are immune from liability from any tort except as waived by other sections of the Act. NMSA 1978, §§ 41-4-2, 41-4-4.

Under § 41-4-10, immunity

>does not apply to liability for damages resulting from
>bodily injury, wrongful death or property damage
>caused by the negligence of public employees
>licensed by the state or permitted by law to provide
>health care services while acting within the scope of
>their duties of providing health care services.

§ 41-4-10. In determining the meaning of "health care services" New Mexico courts look to the ordinary, everyday meaning of such words. *State ex rel. Reynolds v. Aamodt*, 111 N.M. 4, 5 (N.M. 1990). "Ordinarily the term 'health care services' would relate to those services provided by physicians, hospitals, and related health care practitioners." *M.D.R. v. State ex rel. Human Servs. Dep't*, 114 N.M. 187, 190 (Ct.App. 1992). Plaintiffs' Amended Complaint alleges that Defendant Cordova, as a counselor, was at all relevant times a public employee licensed by the state or permitted by law to provide health care services. The Amended Complaint further alleges that "Defendant Cordova acted recklessly, grossly negligently, and negligently in the provision of health care services to Plaintiffs...." *Amended Compl.,* at 9. The Court finds that as a matter of law Plaintiffs have sufficiently alleged that Defendant Cordova provided health care services and is thus not immune under the NMTCA.

In a related argument, Plaintiffs allege that the Supervisory Defendants are not immune under the NMTCA pursuant to section 41-4-9. Under this section, immunity:

>does not apply to liability for damages resulting from bodily injury,
>wrongful death or property damage caused by the negligence of
>public employees while acting within the scope of their duties in the
>operation of any hospital, infirmary, mental institution, clinic,
>dispensary, medical care home or like facilities.

§ 41-4-9. Plaintiffs argue that the Boys' School is a "medical or like facility." *Pls.' Response.*, at 16. New Mexico courts have not conclusively ruled whether a detention center that provides

health care to its detainees falls under the ambit of section 41-4-9. In *Silva v. State*, 106 N.M. 472, 478 (N.M. 1987), the New Mexico Supreme Court stated that section 41-4-9 and section 41-4-10 arguably were applicable to a wrongful death claim brought by the personal representative of an inmate who committed suicide at the corrections facility. "It will be for the finder of fact to determine whether [the official] failed to exercise ordinary care in the discharge of these duties as they may be found to include the operation or maintenance of the corrections and medical care facilities and health care services proximately related to the death of Silva." Due to the lack of the case law, and upon the ordinary usage of the terms "medical care home or like facilities," this Court is persuaded that Plaintiffs may proceed with their claims under section 41-4-9.

Plaintiffs' final assertion under the NMTCA alleges that immunity is waived for Defendant Cordova and the Supervisory Defendants, as they were engaged in the "maintenance and operation of a public and health care facility." *Pls.' Resp.*, at 14. Section 41-4-6 provides that immunity under the NMTCA:

> does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings.

§41-4-6. "Section 41-4-6...contemplate[s] waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government." *Castillo v. County of Santa Fe*, 107 N.M. 204, 205 (N.M. 1988). Plaintiffs contend that immunity must be waived due to the unsafe condition at the Boys' School as the result of Defendant Cordova's actions and the Supervisory

Defendants' failure to act.

In support, Plaintiffs cite to two cases. In *Castillo*, the New Mexico Supreme Court held that the plaintiff stated a claim under section 41-4-6 when she alleged that loose-running dogs on a county-owned housing project was an unsafe condition, provided the county knew or should have known of the danger and the danger was foreseeable. *Id.* at 205-7. Plaintiffs' second supporting case involves an inmate who was severely beaten by gang members with known histories of violence against other inmates. The attack occurred in a recreation area where only two officers were assigned; where there were potential weapons available (pool cues and weight bars); and where the design and layout prevented the guards from directly observing the inmates. *Callaway v. New Mexico Dep't of Corrections*, 117 N.M. 637 (Ct.App. 1994). The court found that the plaintiff sufficiently had stated a claim under section 41-4-6, as jail officials knew or should have known that gang members with propensities for violence created an unsafe condition on the premises, and that the danger to other inmates was foreseeable.

The Court does not agree with Plaintiffs that roving dogs and violent prisoners are similar to an employee who allegedly sexually assaulted Plaintiffs. Although Plaintiffs allege that the Supervisory Defendants knew of Defendant Cordova's actions, the Court declines to broadly construe section 41-4-6 so as to impose liability on officials for the alleged actions of an employee.

## V.    Conclusion

The Court finds Defendants may state a claim under the Fourteenth Amendment due to the Delinquency Act's explicit language stating that juveniles only will be adjudged delinquent. The Court, however, does not find that the Boys' School is subject to the Fair Housing Act, as it

-14-

is not a dwelling. Finally, the Court finds that Plaintiffs may state a claim under section 41-4-10 of the New Mexico Tort Claims Act, as they sufficiently have alleged that Defendant Cordova is licensed by the state to provide health care services. Plaintiffs also may state a claim under section 41-4-9, as it is unclear whether New Mexico courts would allow such a claim for detention centers. Plaintiffs, however, have not sufficiently alleged a claim under section 41-4-6. Wherefore,

IT IS ORDERED that *Defendants Children Youth and Families Department, Danny Cruz, Martin Bochenek, Vincent Vigil, Leroy Garcia, and Ty Hannaman's Partial Motion to Dismiss Plaintiffs' Amended Complaint*, filed August 29, 2003 (*Doc. 53*), is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that *Defendants' Motion to Dismiss Plaintiff Gerald Nieto with Prejudice*, filed December 12, 2003 (*Doc. 109*) is DENIED.

DATED February 4, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE